Good morning, Your Honors. May it please the Court, my name is Roy Chang and I am the attorney representing Mr. Michael Mizuno, who is the appellant in this case. Your Honor, may I first begin by thanking the Court, well, first of all, may I apologize to the Court for not seeking the Court's permission first to use these exceptions. All right, no apologies, and we are now under time constraints, so let's just get to the nub of this case. Your Honor, may I also reserve two minutes for rebuttal? Sure. Your Honor, the Hawaii Supreme Court, in the Dawes decision, had a choice. They could have restricted UM coverage, uninsured bonus coverage, to just the occupants who are within the vehicle. But because of the remedial nature of Hawaii's UM statute, they extended coverage to the occupants, even though they were outside of the vehicle, and in the Dawes case, as far as a mile away, provided, provided that we could show... The Dawes was there because the car had broken down, right? That is correct, yes. So in an approximate cause-y kind of sense, he was more, the causation or the chain of events is more obvious. That is correct, yes. And that's one of the connections which we would have to prove in order to obtain coverage, and one of the connections was, what was the reason that the occupants left the vehicle? And in Dawes, the reason was related to the vehicle. In Leakey, the reason was related to the permitted use of the vehicle by the owner to Mr. Leakey, and so that is the second connection which would also warrant coverage. The Leakey court went one step further and came up with a second connection, and that was a geographic connection. Using the example of the Rao case, the Leakey court felt that proximity was another way of proving connection to the insured vehicle, and in that case, it was 10 or 15 feet away. So what the courts did... What I don't understand here is, to me, he got out of the car to mail a letter, which has nothing to do with driving the car, and that the mailbox is close, or that he was struck by a car close to getting back into the car, I just don't see how it's related at all to operating the car. It's a completely independent purpose with which he was acting, and I don't think either Dawes or Leakey come within that same sort of facts. Yes, Your Honor. The difference would be that, again, looking at Hawaii being a very remedial statute, we don't have to prove that the connection was only because there was something wrong with the car, or that had something to do with the actual physical operation of the car. Connections may also be shown by the permitted use of the car, and that's what our Hawaii court talked about. And what we're looking at is the... What this court should... We asked this court to do is not to reinterpret Hawaii law... Well, suppose that they post that he'd done the same thing. He'd been asked by the owner to deliver the letter, and he had... Or suppose he'd been asked to go buy some milk, and he goes and he parks the car, and he walks three blocks to a supermarket and buys the milk, and so he's now three blocks away, not a couple... Fifty feet away at the time he's run over by the car, by somebody else. Does that matter? No. The reason it does not matter, Your Honor, because that's not for example the factual situations that we have, but may I use my second word? The important thing to know from the facts is that when Mr. Mizuno left the vehicle, he never deviated from the permission to which Ms. Wong had given him to use her car in the first place. I understand. I'm giving you the same hypothetical, except that it was three blocks away. The distance in Dawes did not make a difference. In Leakey, the court said that could, and they resorted to proximity as one of the things. Geographic proximity was a connection to which coverage could be found, and the other thing which is a little bit different in Mr. Mizuno's case, in Dawes, they're actually walking away from the vehicle. In Leakey, he was walking away from the vehicle. In Mr. Mizuno's case, he was actually returning to the vehicle, returning to reoccupy the vehicle. But your answer is it was three blocks away, it wouldn't matter if it was a private vehicle? It wouldn't matter if it was still within the permitted use as the owner had given him to use the car. Does it matter whether or not Wong said he could leave the car to go mail his letters and then return to the car? That was the permitted use that Ms. Wong had given him to use the car, and then to go on to the remainder of the use, which is to take the car. Is that relevant? Is that relevant to this chain of events analysis that Wong said he could get out and I don't see that in the undisputed facts, but that Wong said he could get out and mail the letters? It's relevant for the permitted use connection. If it was just a chain of events, if we go back to Dawes, in Dawes, the chain of events test was as soon as he stepped out of the vehicle, and then he was injured by the uninsured motorist, he would be connected so long as there was no break in the chain of causation. What's troubling is the stopping point question on your theory. Your theory is essentially that anybody . . . The fact that he was asked to do this by the owner of the car is sort of irrelevant, isn't it? As long as he's a permissive driver of the car, the Dawes case would vacate or void the occupancy requirement, and then he would be considered the same as if he were the owner of the car for purposes of the chain of events standard, wouldn't he? Yes, Your Honor, you're correct. So therefore, the fact that he was delivering the mail at the behest of the owner of the car is really not pertinent. So then the question is, all right, three blocks away. Suppose he goes away for three hours and comes back to the car. We're still in the same place? If he drove somewhere in a car and went somewhere to watch the movies five blocks away and now he's driving, is there a stopping point here? And that's really a very good question. If you were to read Dawes that way, yes, that would be true. I think what the . . . What would be true? That he, so long as he had permitted use of the vehicle and that . . . He went somewhere in the vehicle and he was going back to the car. That's correct. No matter where he went for how long he went or how far away it was. So long as he had permission to use the car and no matter where it took place and that would be one connection. What I'm trying to say is that Leakey had some problems with that, I think, as well. So Leakey tried to come up with some other examples of connections and that's where they came up with the permitted use connection as well as the geographic connections. But again, the decision by extremely liberal decision because of the purpose of Hawaii's Uninsured Motorist Statute, which really the main purpose behind the statute was to put the injured person in the same position he or she would have been had the irresponsible motorist been insured or in this case . . . That just comes out like a fortuity at that point. Whether the person got to the movies by a car or a seems to have very little to do with whether if somebody runs them down, they're covered by car insurance. I mean, as far as being not the owner of the car insurance but . . . Well, whoever it is. I'm on the premise that what Dawes did do was eliminate any difference between the owner and the permissive driver. So therefore, it would be whether it's the owner or the permissive driver. Nonetheless, the question is, do they really mean that if you go someplace in a car, as long as you're either leaving the car or coming back to the car, no matter how far you are from the car, you're covered? You're correct, Your Honor. That's the way Dawes . . . I'm sorry, what? You are correct. That's the way Dawes has been interpreted. That's where the dissent had a problem with it and that's also what the leaky court said was, you know, it's a very broad thing, but what we're going to do is add a little bit more other ways of proving that connection and that's why they went into these other criteria, not saying it had to be there, but someone that wanted to prove that connection . . . Who went to the other criteria? The leaky case? The leaky case, yes, Your Honor. That was the Intermediate Court of Appeals. What they did was they looked at the Rau criteria from the state of Washington and they adopted just one of those criteria, which was the geographic connection, the close proximity to the car. So I think what the leaky court tried to do was to add or give us, the courts, more examples of where you could have this connection or how the connection can be proven without just the broad connection and I think that's what we have in our case. If you were just to apply leaky to our facts and that's what we're asking the court to do, leaky really is controlling in that respect because the two criteria which leaky relied upon permitted use of the vehicle and proximity is exactly what happened in Mr. Mizuno's case except for one other thing and that other thing was he was returning to the vehicle. And the last connection to the whole thing is when Mr. Mizuno left the vehicle he never deviated from the entire mission to which Ms. Wong had asked him to do and he never broke the chain of causation. So he fulfilled at least three or four of the connections to which both courts have talked about and as far as the leaky court is concerned, those criteria are examples which they wanted to give to the courts so that they could use those examples in which to find coverage and connection. Again, because of the remedial nature of Hawaii's law. Thank you. May it please the court. Good afternoon, Your Honors. My name is David Hirata-Stone and I represent Apoli State Farm Mutual Automobile Insurance Company. I think as Your Honors have identified already claimant's argument here is for an extension of Hawaii case law regarding the applicability of... Well why is it different than leaky in any way that matters? Leaky, it's different than leaky primarily because the characterization by appellant's counsel that leaky turned primarily on proximity is not entirely accurate. Leaky the court was looking for a connection between the claimant's injury and the insured motor vehicle and it found that connection by the fact that leaky was an employee of the deemed insured. This was a commercial policy and issue to a corporate entity who was using the truck during the course of his employment to get to and from the job site where he was injured and to store and transport the equipment that he was using as part of his duties at the time he was injured. This was while cleaning a sump at a gas station. Here you have use of a vehicle for personal use and other... I mean it appears... Do you disagree that Dawes said that the occupancy limitation with regard to permissive drivers is void? Void, gone. I agree to the extent that that policy language limited insured status to someone injured while actually in the vehicle. So that's void. So therefore we have the permissive driver now in the same position as I understand it as an owner or a employee or anybody else who is otherwise covered by the insurance. I would respectfully disagree with you. Why is that? That is because what the court has made clear in this decision and others is that with regard to a so-called class one insured, who would be the named insured spouse or resident family member U.M. and U.I.M. coverage applies regardless of where that person is. Even if the person was not previously inside a vehicle, had not transited to any accident location in the vehicle, it just follows the person. It's portable. And so... So you would agree that if this person was the owner of the car and exactly the same thing happened, they'd be covered? Yes. So what... So then don't you lose at that point under Dawes because... No, because Dawes doesn't eliminate that distinction entirely. It says it's void. What does void mean if it doesn't mean that it isn't there? Respectfully, Your Honor, what Dawes says is that the limitation to exclusive... exclusively to occupancy as opposed to other connections to the vehicle is void. It doesn't say that... So the chain of events standard applies differently to the owners than to pervasive drivers? What the Dawes court did was construct or adopt from an Oklahoma court decision a chain of events test that related to the anomaly presented where you have an owner or other Class I insured and simply a passenger in the same vehicle at the same time and who are they being the same vehicle at the same time? Well, actually the very first element of the Dawes test, Your Honor, is if a person was a passenger in an insured vehicle being operated by a named insured or a named insured's family member. Which was, of course, the situation in Dawes in that you had the resident adult son of the named insured had been driving the vehicle and a non-resident non-relative passenger was later injured in their trek to get help after the vehicle broke down. What's Class II? What's a Class II person? A Class II person would be an insured whose status as insured is by virtue of the person's connection to the vehicle. Either occupancy, use, operation. What Dawes and Olson before it and Leakey recognize is that insurers are not free to limit that solely to occupancy, but that if the requisite connection, as was established in Leakey or in Olson for that matter, although in Olson it was couched in terms of use, is established and that person is entitled to insured status. What's your best argument why Mizuno doesn't fall within Leakey slash Dawes? Because of none of the connection to the vehicle that was present in either Dawes or Leakey as present here, other than the fact that he at one point was in the vehicle, transited to a certain place got out, closed the vehicle, was no longer operating, walked across the street, performed a task, and then walked back and was struck. And I think that raises the question that Your Honors had raised during Counsel's argument about the limitations of that status. Would it apply? If it had been a Class 1, it would have been covered. Correct. No question. The fact that it's a Class 2 means somehow they lose the protection. Well, I think Your Honor, what it means is that as a Class 2 insured, their insured status for purposes of UM coverage depends on their connection to the vehicle. Whereas a Class 1 insured status depends on that person's status as a named insured spouse or resident relative. And what we're saying is that the connections found in Dawes, in which the whole purpose of the trek related to the vehicle, and Leakey, which I read from the court's decision regarding multiple connections to the vehicle, are not present here. And if the court in Dawes had wanted to create a rule that any time a passenger or someone operating the vehicle who wasn't a named insured or otherwise a Class 1 insured got to a location in that vehicle, and after leaving the vehicle and not in the process of getting in or out of it, was somehow injured in a motor vehicle accident, that person was necessarily an insured. It wanted to create that sort of bright line rule. The Dawes court could have done that, but it didn't. Instead it gave us this test regarding chain of events. And we would submit, Your Honors, that the insured, that Mr. Mizuno in this case doesn't satisfy all of the elements of that test. Even if you get beyond the first element, where he wasn't a passenger in a vehicle operated by a named insured or family member, there's still the issue of his connection to the vehicle at the time of the accident. He had simply deposited mail and was walking across the street. It had nothing, no integral relationship between what he was doing and the vehicle, other than that he was heading back in the direction of the vehicle. And we have this situation here without limits. As recognized in Dawes that someone could have gone to the movies, gone to a restaurant, gone from one side of a shopping center to the other and been involved in a pedestrian accident. And under the plaintiff's defendant's appellant's argument, that person would be entitled to coverage. And that would in effect do what Your Honors had asked about. And that would be to eliminate all distinctions between Class 1 and Class 2 insureds. But the court in Dawes didn't do that. It could have. It certainly had the opportunity. But it didn't make that sort of blanket distinction or bright line rule. And in fact, none of the cases cited by appellant's counsel establishes such a broad, far-reaching concession of coverage. Whether under Hawaii law or any other. The person was not a passenger. Yeah. And the Intermediate Court of Appeals did apply the chain of events test. Although it struggled with the issue of whether the first element of that chain of events test would apply. But it concluded it didn't matter after it struggled. Yeah. It didn't matter ultimately because it found the requisite. Ultimately is what matters. It found the requisite connection to the vehicle. Okay. And so this is different because? Well, again all of the connections mentioned in Leakey regarding the claimant's use of the vehicle as part of his job function and to carry the equipment to which he went back and forth to get the equipment. And the fact that it was a commercial vehicle insured under commercial policy. All of these in the Leakey Court's view established the requisite connection. And Thank you counsel. I think we've got your argument. Thank you, Your Honor. You have a minute for rebuttal. Real quick. I mean I think the court is I think there was no requirement that the owner had to be in the vehicle. I think they were also trying to say, well, it's very limited because it only applies I don't understand your opponent to be saying they had to be in the vehicle. Within. In other words, he had to accompany, the owner had to be accompanying Mr. Leakey in order for this to happen. I think Leakey basically said it didn't matter. And lastly, I think the court had to correct and judge Verzon that what the Supreme Court did was it took class one and class two individuals and voided it. It says we're going to treat them the same. Our law requires us to be treated the same. And then just the last point as far as, State Farm is trying to argue that this is job related. There's nowhere in the policy or in the law that it says it only has to be job related. And again, that's why Leakey went and said there are other Correct. It's really mission related relationship permitted use I think is what Leakey said. Thank you Your Honor. I appreciate it.
judges: Wardlaw, Berzon, Rawlinson